[No. S089115. Oct. 1, 2001.]

ELGIN HAYNIE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
COUNTY OF LOS ANGELES, Real Party in Interest.

**COUNSEL**

Adam Axelrad, Robert Mann, Donald W. Cook; Litt and Associates and Barrett S. Litt for Petitioner.

Daniel P. Tokaji, Alan Schlosser and Jordan C. Budd for ACLU Foundation of Southern California, ACLU Foundation of Northern California and ACLU Foundation of Imperial & San Diego Counties as Amici Curiae on behalf of Petitioner.

Quinn Emanuel Urquhart Oliver & Hedges and Timothy L. Alger for California Newspaper Publishers Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Manning & Marder, Kass, Ellrod, Ramirez and Steven J. Renick for Real Party in Interest.

## OPINION

**BAXTER, J.**—The premise of the California Public Records Act (Gov. Code, § 6250 et seq.; hereafter CPRA)[1] is that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.) To implement that right, the act declares that "[p]ublic records are open to inspection." (§ 6253.) At the same time, the act recognizes that certain records should not, for reasons of privacy, safety, and efficient governmental operation, be made public. Section 6254, in the course of 26 separate subdivisions, sets forth many of those exceptions. In this case, we are asked to construe subdivision (f) of section 6254 (section 6254(f)) and apply that construction to certain records of a law enforcement agency.

The trial court denied petitioner Elgin Haynie's request that the Los Angeles County Sheriff's Department be ordered to produce records Haynie considered relevant to an incident in which he was detained by sheriff's deputies: The records in question concern a citizen's call to report a possible crime and the department's response thereto. After the court denied Haynie's request, he filed a petition for writ of mandate in the Court of Appeal seeking to compel production of the records. The Court of Appeal found that "the prospect of enforcement proceedings [was] not concrete and definite when the records were prepared" and ordered issuance of a peremptory writ of mandate directing the superior court to determine whether the requested records exist and, if so, to order their disclosure.

We granted review, on the petition of real party in interest County of Los Angeles (County), to consider the Court of Appeal's construction of section 6254(f) as it applies to materials the County claims are exempt as "[r]ecords of . . . investigations" conducted by a law enforcement agency. We also address the County's claim that the Court of Appeal exceeded its authority in holding that public agencies responding to CPRA requests must, as part of their initial response, provide lists of all potentially responsive records in their possession, including records exempt from disclosure under section 6254.

We conclude that the Court of Appeal erred in directing disclosure of the records in question and in ordering the County to create a log of documents exempt from disclosure and therefore reverse the judgment granting the petition for writ of mandate.

---

[1] All statutory references are to the Government Code unless otherwise noted.

I

*Background*

The allegations of the petition for writ of mandate and supporting exhibits reflect the following, the truth of which has not been established: Haynie, who is a 42-year-old Black male, was driving a blue Ford van with three teenage Latina passengers when he was stopped by Los Angeles County Deputy Sheriff David Mertens around 4:00 p.m. on July 1, 1999. Minutes earlier, a citizen had reported three teenage Asian males getting into a blue Ford van with what she believed were pistols or squirt guns. Haynie was handcuffed, he and the three passengers were questioned, and the van was searched. Eventually, Deputy Mertens released Haynie and the three passengers. No charges were filed against them. Haynie, however, claims he was injured during the course of the questioning and was hospitalized for several days.

On July 12, 1999, Haynie presented a tort claim to the County under Government Code section 910 and filed a citizen's complaint with the Los Angeles County Sheriff's Department under Penal Code section 832.5. That same day, he submitted a "Demand for Public Records" to the Sheriff's Department for "any writings" concerning the July 1, 1999 incident. The letter identified the deputies involved and requested (but was not limited to) any crime reports, arrest reports, evidence reports, use-of-force reports, canine reports, officer-involved-shooting reports, follow-up reports, handwritten notes, supervisors' reports, notes or reports of interviews of witnesses, and tape recordings (including recordings of radio calls leading up to the incident, recordings containing any information forming the basis for Haynie's detention, and recordings of any communications between the deputies and Haynie or anyone else present at the time of the incident). The letter also recited Haynie's understanding that a supervisor (probably Deputy Jensen) had interviewed several witnesses and had taken notes of the interviews; that a deputy (probably Mertens) had tape-recorded his conversation with Haynie; and that a broadcast describing the suspects and their vehicle had been tape-recorded.

The sheriff's department refused to provide any records, claiming the exemption of section 6254(f), and did not identify any records withheld. The department instead disclosed certain information in this "summary of the event":

"On July 1, 1999, at approximately 1650 hours, Deputy Mertens received a call from a neighbor who saw several males carrying guns enter an older

model dark blue Ford van and travel down the road. The deputy spotted a vehicle matching that description five minutes later and he decided to conduct an investigation of the van. Elgin Haynie was later identified as the drive [*sic*] of the van along with three females [*sic*] passengers.

"Prior to the stop of the van, the deputy noticed furtive movements on the part of the driver and the passengers. When contacted by the deputy, Mr. Haynie became argumentative and had to be handcuffed. After a brief conversation with the three passengers and Mr. Haynie it was determined that they were not related to the previous call and were released.

"The deputy left the location, but returned within moments only to find Mr. Haynie attempting to inflict injury to his wrists by striking the pavement. The deputy subsequently requested paramedics and a field supervisor.

"Photographs were taken of Mr. Haynie at the scene and no injuries were noted. Mr. Haynie told the supervisor he had no complaint of pain, and the paramedics did not note any injury, either."

Haynie next filed a "Verified Petition for Order Compelling Disclosure of Public Records and Materials" under section 6258 and a "Motion for Order Compelling Disclosure of Public Records and Materials and for Award of Statutory Attorney's Fees and Costs." The County asserted in response that it had fully complied with the CPRA by providing information in summary form; that the records pertaining to Haynie's pending litigation were exempt from disclosure under section 6254, subdivision (b); and that the records of the investigation that included Haynie's detention were exempt from disclosure under section 6254(f). The response was accompanied by a declaration of counsel stating that Haynie had filed a legal claim relating to this incident with the Los Angeles County Board of Supervisors on July 13, 1999; that no crime report, arrest report, evidence report, use-of-force report, canine report, officer-involved-shooting report, or follow-up report existed; and that documents generated as a result of the citizen's complaint filed by Haynie's attorney *did* exist but were privileged and could not be disclosed prior to a hearing on a *Pitchess*[2] motion. No *Pitchess* motion had yet been filed, however.

At a hearing to consider the petition and the County's opposition thereto, the trial court expressed a tentative belief that the CPRA "is not a prelitigation discovery statute[;] . . . . that this case is governed by 6254(f) under which the county has only the obligation to provide certain information, and not documents, and that the county has done so . . . ." After argument the

---

[2]*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

court ruled orally from the bench: "[T]he matter is governed by 6254(f) and by princip[le] in that this is not a prelitigation discovery statute."

The Court of Appeal issued an alternative writ and, after further briefing and argument, issued a peremptory writ of mandate directing the superior court to vacate its denial order and reconsider the petition and motion as to three categories of records, the existence of which the County has never affirmatively asserted or denied: (1) recordings of any radio broadcast that the deputies heard prior to the stop that was relevant to their decision to stop Haynie; (2) any tape recording of Haynie's conversations with the deputies during the stop; and (3) any statements obtained from the passengers in Haynie's vehicle during the stop.[3] Relying on statements in *Williams v. Superior Court* (1993) 5 Cal.4th 337, 356 [19 Cal.Rptr.2d 882, 852 P.2d 377] (*Williams*) and *Uribe v. Howie* (1971) 19 Cal.App.3d 194 [96 Cal.Rptr. 493] (*Uribe*), the Court of Appeal held that the exemption for records of investigations applies only when the prospect of enforcement proceedings is concrete and definite. Concluding that no such prospect existed for those records "created before or during the stop," the court directed the trial court to "determine whether the records in question exist and, if so, order their disclosure."[4] The court also instructed the County to determine whether any responsive records exist, "enumerate or describe the records so discovered, identify exemptions applying to any enumerated or described records, and disclose the remaining records."

The County contends that the Court of Appeal misconstrued the exemption for records of investigations under section 6254(f) and is without authority to require an agency, as part of its initial response to a CPRA request, to create lists of all potentially responsive documents, including documents statutorily exempt from disclosure. We agree.

---

[3] We observe that Haynie's request for the first two categories of records may be moot in whole or in part in that he has since received, through discovery in his federal action, *Haynie v. County of Los Angeles* (C.D.Cal., No. CV 00-3935), a transcript of the recording of the conversation during the stop and a tape of the citizen's complaint.

[4] The Court of Appeal did reject Haynie's claim as to a fourth category of records: the tape-recorded statement he had made after filing a citizen's complaint about the deputies. The Court of Appeal, again relying on *Uribe*, reasoned that substantial evidence supported the finding that the record in question was created "when the prospect of enforcement proceedings arising from this complaint [was] concrete and definite." Haynie argued in the alternative that he was entitled to a copy of his statement under Penal Code section 832.7, subdivision (b), which provides that "a department or agency shall release to the complaining party a copy of his or her own statements at the time the complaint is filed." The Court of Appeal, noting that Haynie had failed to present this argument to the trial court, declined to address it. Haynie does not renew the argument in this court, and we express no views on it.

## II

 The CPRA provides that "every person has a right to inspect any public record, except as hereafter provided." (§ 6253, subd. (a).) Hence, "all public records are subject to disclosure unless the Legislature has expressly provided to the contrary." (*Williams, supra*, 5 Cal.4th at p. 346.)

 The Legislature has assembled a diverse collection of exemptions from disclosure in section 6254. The County relies on subdivision (f), which in pertinent part authorizes a public agency to withhold "[r]ecords of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes . . . ." In lieu of disclosing these records, the CPRA requires the agency to disclose certain information derived from them. (*Williams, supra*, 5 Cal.4th at p. 353.)

The County contends that the materials Haynie seeks are "[r]ecords of . . . investigations conducted by . . . [a] local police agency" and are thus exempt from disclosure under section 6254(f). Haynie, like the Court of Appeal, believes that such records may be withheld from disclosure only when the prospect of enforcement proceedings is "concrete and definite" under *Uribe, supra*, 19 Cal.App.3d at page 212. To resolve this dispute, it may be helpful to review *Uribe* in some detail.

*Uribe*, unlike the present case, involved the construction of section 6254(f)'s exemption for "investigatory . . . *files* compiled by any . . . local agency for correctional, law enforcement, or licensing purposes . . . ." (Italics added.) The plaintiff, a farm worker who suffered from health problems attributed to pesticides, requested access to mandatory reports filed by farmers who had sprayed pesticides in the area. The county agricultural commissioner argued that the reports were part of investigatory files compiled for law enforcement and licensing purposes and thus exempt under section 6254(f). The Court of Appeal rejected the commissioner's claim, finding that "this was not the primary purpose [for which] they were compiled" and there was no indication "that any of the reports were being put to such a purpose at the time of trial." (*Uribe, supra*, 19 Cal.App.3d at p. 213.)

*Uribe* then held, as we have previously observed, "that the exemption for 'files' applies 'only when the prospect of enforcement proceedings is concrete and definite. [Citation.] It is not enough that an agency label its file

"investigatory" and suggest that enforcement proceedings may be initiated at some unspecified future date or were previously considered. . . . [¶] . . . To say that the exemption created by subdivision (f) is applicable to any document which a public agency might, under any circumstances, use in the course of [an investigation] would be to create a virtual *carte blanche* for the denial of public access to public records. The exception would thus swallow the rule.' (*Uribe, supra,* 19 Cal.App.3d at pp. 212-213, citing *Bristol-Myers Company* v. *F.T.C.* (D.C. Cir. 1970) 424 F.2d 935, 939 [138 App.D.C. 22].)" (*Williams, supra,* 5 Cal.4th at pp. 355-356.) Based on subsequent decisions, which had followed *Uribe*'s holding "on this point," we said in *Williams* that "it now appears to be well established that 'information in public files [becomes] exempt as "investigatory" material only when the prospect of enforcement proceedings [becomes] concrete and definite.' " (*Id.* at p. 356.) Such a qualification is necessary to prevent an agency from attempting to "shield a record from public disclosure, *regardless of its nature,* simply by placing it in a file labelled 'investigatory.' " (*Id.* at p. 355, italics added.)

However, neither this court nor any court Haynie has identified has extended this qualification to section 6254(f)'s exemption for "[r]ecords of . . . investigations . . . ." The case law, in fact, is to the contrary. In *American Civil Liberties Union Foundation* v. *Deukmejian* (1982) 32 Cal.3d 440 [186 Cal.Rptr. 235, 651 P.2d 822] (*ACLU*), for example, we explained that the "concrete and definite" qualification to the exemption in section 6254(f) "relates only to information which is not itself exempt from compelled disclosure, but claims exemption only as part of an investigatory file. Information independently exempt, such as 'intelligence information' in the present case, is not subject to the requirement that it relate to a concrete and definite prospect of enforcement proceedings." (*ACLU, supra,* at p. 449, fn. 10.) In *Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645 [117 Cal.Rptr. 106] (*Black Panther Party*), the Court of Appeal explained that in *Uribe,* "the record in question was not a complaint but a routine report in a public file. It could gain exemption not because of its content but because of the use to which it was put, that is, when and if it became part of an investigatory file. Here, by their very content, the documents are independently entitled to exemption as 'records of complaints'; their exemption is not dependent upon the creation of an investigatory file." (*Black Panther Party, supra,* at p. 654.)

What is true for records of complaints (*Black Panther Party*) and intelligence information (*ACLU*) is true as well for records of investigations. The latter, no less than the former, are exempt on their face, whether or not they are ever included in an investigatory file. Indeed, we alluded to this in *Williams,* when we noted that "a document in the file may have extraordinary significance to the investigation even though it does not on its face

purport to be an investigatory record *and, thus, have an independent claim to exempt status.*" (*Williams, supra,* 5 Cal.4th at p. 356, italics added.) Limiting the section 6254(f) exemption only to records of investigations where the likelihood of enforcement has ripened into something concrete and definite would expose to the public the very sensitive investigative stages of determining whether a crime has been committed or who has committed it.[5]

Haynie then argues that if no concrete and definite prospects of enforcement need be shown to exempt records of investigations from disclosure, then "records of investigations" should be defined so as to exclude investigations that are merely "routine" or "everyday police activity," such as his traffic stop. *Williams,* he points out, involved a "long-term" investigation into the potential criminal conduct of law enforcement officers, and *City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411 [44 Cal.Rptr.2d 532] involved a "lengthy" investigation of a police sergeant's conduct. Haynie's proposed limitation finds no support in the statute. Moreover, he offers no principled basis for determining which investigations are sufficiently lengthy or important to be accorded the status of "investigations" within the meaning of section 6254(f)—nor any way to predict, at the outset, what might result in a lengthy or important investigation. One "third-rate burglary attempt," for example, ultimately toppled a president.[6]

Haynie's concession that records of a murder investigation would be exempt further illustrates the impossibility of making such a distinction. Law enforcement officers may not know whether a crime has been committed until an investigation of a complaint is undertaken. An investigation may be inconclusive either as to the cause of death or the circumstances in which the death occurred. A fire may be suspicious, but after investigation be found to have an accidental or natural origin. In this case we have no reason to believe that the deputies who stopped Haynie were not investigating a report of what they believed might be criminal conduct. (See, e.g., Pen. Code, § 12031.)

The interpretation offered by Haynie would also impair "routine" investigations. Complainants and other witnesses whose identities were disclosed

---

[5]Given our conclusion that *Uribe* does not apply to the exemption for records of investigations under section 6254(f), we express no views as to the correctness of the Court of Appeal's determination that the records here did not satisfy *Uribe*'s "concrete and definite" standard.

[6]The Court of Appeal, in ordering disclosure, reasoned that the citizen report of several men with guns entering a vehicle did not "necessarily" describe a crime and that the stop itself was a "routine police inquiry" based on mere suspicion of criminal conduct. These factors are of no significance under the statute. In exempting "[r]ecords of complaints to, or investigations conducted by" law enforcement agencies, section 6254(f) does not distinguish between investigations to determine if a crime has been or is about to be committed and those that are undertaken once criminal conduct is apparent.

might disappear or refuse to cooperate. Suspects, who would be alerted to the investigation, might flee or threaten witnesses. Citizens would be reluctant to report suspicious activity. Evidence might be destroyed.

To avoid these evils, Haynie suggests that the exemption could apply to everyday police work if disclosure "would endanger a witness or anyone else, or if it would endanger the successful completion of *any* investigation." The County's failure to articulate a specific need to withhold the records here, he reasons, means they should be disclosed. This is not the first time, however, that we have been asked to graft a requirement of need onto the statute. We were presented with and unanimously rejected it in *Williams*: "Under the proposed test, documents would be exempt from disclosure only if '(1) they directly pertain to specific, concrete and definite investigations of possible violations of the criminal law; or (2) their disclosure would impair the ability of law enforcement agencies to conduct criminal investigations by disclosing confidential informants, threatening the safety of police agents, victims, or witnesses, or revealing investigative techniques.' The adoption of such a test, which includes the substance of three of the [federal Freedom of Information Act (FOIA)] criteria (see 5 U.S.C. § 552(b)(7)(D), (E) & (F)), is subject to the same objection as the proposal to incorporate the FOIA criteria wholesale: the Legislature has carefully limited the exemption for law enforcement investigatory records by requiring the disclosure of specific information from such records. It is not our task to rewrite the statute." (*Williams, supra,* 5 Cal.4th at p. 354.)

Yet, by including "routine" and "everyday" within the ambit of "investigations" in section 6254(f), we do not mean to shield everything law enforcement officers do from disclosure. (Cf. *ACLU, supra,* 32 Cal.3d at p. 449.) Often, officers make inquiries of citizens for purposes related to crime prevention and public safety that are unrelated to either civil or criminal investigations. The records of investigation exempted under section 6254(f) encompass only those investigations undertaken for the purpose of determining whether a violation of law may occur or has occurred. If a violation or potential violation is detected, the exemption also extends to records of investigations conducted for the purpose of uncovering information surrounding the commission of the violation and its agency. Here, the investigation that included the decision to stop Haynie and the stop itself was for the purpose of discovering whether a violation of law had occurred and, if so, the circumstances of its commission. Records relating to that investigation are exempt from disclosure by section 6254(f). The Court of Appeal erred in ordering them to be disclosed.

Haynie argues, in the alternative, that he is entitled to any tape recording of the citizen report and any other recording under section 6254(f)(2), which

directs law enforcement agencies to make public, "[s]ubject to the restrictions imposed by Section 841.5 of the Penal Code, the time, substance, and location of all complaints or requests for assistance received by the agency and the time and nature of the response thereto, including, to the extent the information regarding crimes alleged or committed or any other incident investigated is recorded, the time, date, and location of occurrence, . . . the factual circumstances surrounding the crime or incident, and a general description of any injuries, property, or weapons involved." He argues that the "substance" of the citizen's call is the content of the call as reflected in the recording of the call and that the "factual circumstances" surrounding the stop are what happened during the stop as reflected in the recording of the stop. Inasmuch as subdivision (f)(2) requires that the information be provided "to the extent" it was recorded, the recording itself must be disclosed.

Section 6254(f)(2) is not amenable to the construction Haynie suggests. This section specifies the information—not the records—that must be provided, such as the "substance" of complaints and the "factual circumstances surrounding the crime or incident." In enacting this provision, the Legislature "required the disclosure of *information derived from the records* while, in most cases, preserving the exemption for the records themselves." (*Williams, supra*, 5 Cal.4th at p. 353; *City of Santa Rosa v. Press Democrat* (1986) 187 Cal.App.3d 1315, 1321 [232 Cal.Rptr. 445]; *Furnishing Copies of Arrest or Complaint Reports*, 65 Ops.Cal.Atty.Gen. 563 (1982).) The Legislature's effort to provide access to selected information from law enforcement investigatory records would have been a wasted one if, as Haynie proposes, the recordings themselves were subject to disclosure.

### III

 The Court of Appeal also ruled that, upon receiving Haynie's Demand for Public Records, the County was obligated to determine whether the records exist, "enumerate or describe the records so discovered, identify exemptions applying to any enumerated or described records, and disclose the remaining records." In this court, the County does not dispute its obligation to determine whether requested records exist and whether exemptions apply to those records nor does it deny its duty to disclose nonexempt records that it has found. The County objects only to the ruling of the Court of Appeal that it should have provided Haynie with an enumeration or description of all responsive records, regardless of whether those records were exempt from disclosure.

Section 6255 states that if records within the ambit of the request are withheld based on a statutory exemption, the agency must disclose that fact.

Heretofore, however, the agency, in its initial response to a request for inspection of records, has not been required to create an inventory of the records responsive to the request or those for which it claims an exemption. Such a list has been ordered only when a petition to compel disclosure has been filed, the agency claims the records are protected by an exemption, and the records are being transmitted to the court for in camera review to evaluate the claim. After the petition had been filed in *Williams*, for example, the superior court ordered the Sheriff of San Bernardino County to lodge under seal the records for which an exemption was claimed and provide the petitioner with an index of the records being lodged. (*Williams, supra,* 5 Cal.4th at p. 344.) In *State Bd. of Equalization v. Superior Court* (1992) 10 Cal.App.4th 1177 [13 Cal.Rptr.2d 342], the board complained that the burden of complying with the petitioner's CPRA request far exceeded the benefits. The Court of Appeal approved the solution of the superior court, which was to direct the board to prepare a list of responsive documents to permit the petitioner to refine its request to exclude unwanted documents. (*Id.* at pp. 1183-1184, 1191-1192.)

The County does not challenge here the ability of a court to direct an agency, once the petition has been filed, to prepare a list of responsive records and provide it to the requesting party. Rather, it contends that requiring the preparation of a list of all potentially responsive records as part of the agency's initial response to a request for inspection goes beyond any responsibility imposed on public agencies by the CPRA, the case law construing and applying the act, or sound public policy.

This requirement, the County argues, expands the scope of the CPRA far beyond its original purpose of simply making records available for inspection. The law mandates that public records be "open to inspection at all times during the office hours of the state or local agency" (§ 6253, subd. (a)), recognizes that "every person has a right to inspect any public record" not exempted by the act (*ibid.*), and obliges the public agency to provide copies of its nonexempt records at the expense of the person requesting copies. (§ 6253, subd. (b).) In so doing, the Legislature has endeavored both to maximize public access to agency records and minimize the burden and expense that opening the records to inspection and copying imposes on public agencies. In other circumstances, where the Legislature has intended for a responding party to enumerate and describe each document being withheld, it has done so with great specificity. (E.g., Code Civ. Proc., § 2031, subd. (g)(3).) Although the CPRA describes its procedures and exceptions "in exceptionally careful detail" (*Williams, supra,* 5 Cal.4th at p. 361), it contains no equivalent provision describing an agency's duty to create a log of documents exempt from disclosure.

Haynie suggests that such a requirement may be inferred from section 6255, subdivision (a), which provides: "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." We have previously referred to this provision as "a catch-all exemption." (*Williams, supra,* 5 Cal.4th at p. 347, fn. 9.) It outlines the circumstances under which an agency may withhold a record: by demonstrating that the record falls within a statutory exemption or that the public interest in nondisclosure clearly outweighs the public interest in disclosure. When an agency, in compliance with section 6255, articulates one or more of these exemptions, it will necessarily reveal the general nature of the documents withheld. For example, an agency that invokes subdivision (j) of section 6254 has revealed that the withheld documents are library circulation records. Here, the County's invocation of section 6254(f) revealed that the withheld documents were records of an investigation. What section 6255 does not require, however, is for the agency to go further and *describe* each of the documents falling within the statutory exemption. The Legislature, which has carefully detailed the components of the agency's denial of a CPRA request, even to the point of requiring the agency to "set forth the names and titles or positions of each person responsible for the denial" (§ 6253, subd. (d)), is fully capable of requiring agencies to include a log of withheld documents. Given this detailed scheme, it would be inappropriate for us to enlarge the agency's burden under the guise of interpreting the statute.

The case law, as stated, has never approved or even mentioned a public agency's obligation to create a list and description of documents withheld at the prepetition stage. Indeed, the Court of Appeal in *State Bd. of Equalization v. Superior Court,* while affirming the superior court's order directing the preparation of a list after a petition had been filed, noted that "the Public Records Act does not, like the FOIA, require the maintenance of an index of records available for public inspection . . . ." (*State Bd. of Equalization v. Superior Court, supra,* 10 Cal.App.4th at p. 1193.)

The burdens and risks of such a requirement appear substantial. Requiring a public agency to provide a list of all records in its possession that may be responsive to a CPRA request has the potential for imposing significant costs on the agency. A single request may involve thousands of pages of materials. (E.g., *State Bd. of Equalization v. Superior Court, supra,* 10 Cal.App.4th at p. 1183, fn. 6.) To require each public agency to catalog the responsive documents for *each* of the requests it receives—even when the agency could legitimately claim that all responsive documents are exempt

from disclosure—would be burdensome and of scant public benefit. (Cf. *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1345 [283 Cal.Rptr. 893, 813 P.2d 240] [request for copies of the Governor's appointment schedules, calendars, notebooks, and any other documents listing the Governor's daily activities over a five-year period].) In addition, where (as here) the documents are generated as part of a criminal investigation, a list of documents withheld may also reveal information ordinarily deemed exempt from disclosure, such as how far the investigation had progressed, whether witnesses had been contacted, and whether forensic tests had been conducted. Moreover, the log itself may launch satellite litigation over the adequacy of its descriptions of the documents exempt from disclosure.

We have no doubt that an agency may elect to create such a list, with or without requiring reimbursement for its costs, but we find nothing in the act itself that mandates any action other than opening for inspection the records identified as coming within the scope of the request or providing copies thereof at the expense of the person requesting copies. Preparing an inventory of potentially responsive records is not mandated by the CPRA. We therefore conclude that the Court of Appeal erred in holding that such inventories or lists must be created as a matter of course as part of the agency's initial response to CPRA requests.

## IV

The judgment of the Court of Appeal is reversed, and the cause is remanded to that court with directions to deny the peremptory writ and discharge the alternative writ.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Brown, J., and Hull, J.,* concurred.

---

*Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.