[No. C054832. Third Dist. Aug. 19, 2008.]

THE ZUMBRUN LAW FIRM, Plaintiff and Appellant, v.
CALIFORNIA LEGISLATURE et al., Defendants and Respondents.

## COUNSEL

The Zumbrun Law Firm, Ronald A. Zumbrun and Todd M. Ratshin for Plaintiff and Appellant.

Diane F. Boyer-Vine, Robert A. Pratt and Marian M. Johnston for Defendants and Respondents.

## OPINION

**BLEASE, Acting P. J.**—Plaintiff, The Zumbrun Law Firm, brought this action as a taxpayer against defendants California Legislature, its Committees on Rules and others,[1] seeking declaratory and injunctive relief, claiming that

---

[1] The Joint Committee on Rules (Joint Rules Committee), the Assembly Committee on Rules, the Senate Rules Committee, Jon Waldie, Gregory P. Schmidt, and Keith Felte.

a contract for the Capitol Park Safety and Security Improvements Project (Capitol Project), entered into by the Committees on Rules of the Legislature to improve security measures at the Capitol by controlling access to the State Capitol building and grounds, violated the separation of powers doctrine of the state Constitution[2] and unlawfully restricted competitive bidding under the State Contract Act (Pub. Contract Code, § 10100 et seq.) by requiring an all-union workforce. Plaintiff also sought, but was denied in part, records relating to the contract under the Legislative Open Records Act (LORA; Gov. Code, § 9070 et seq.).[3]

The trial court concluded the contract did not violate the separation of powers or the State Contract Act. It also concluded that the denial of discovery of certain records did not violate LORA. We agree.

The contract did not violate the separation of powers doctrine of article III, section 3 of the Constitution because under article IV, section 7 of the Constitution, the Legislature retains powers necessary to its lawmaking functions, including the power to protect the safety and security of the Legislature, its members and any buildings and grounds used by the Legislature. (See also *Ex parte McCarthy* (1866) 29 Cal. 395.) The Legislature did not delegate this function to the Department of General Services (Department or General Services) when it created the Department to provide management and technical services for the state. (§ 14600.) Lastly, the Legislature is not bound by the competitive bidding requirements of the State Contract Act, and the documents sought are exempt from discovery under LORA and the Constitution.[4]

We shall affirm the judgment.

## FACTS RELATING TO SEPARATION OF POWERS

On January 16, 2001, a big rig truck rammed into the south entrance to the State Capitol, causing a fire and major structural damage, and killing the truck's driver. Close on the heels of that disaster came the horrifying events of September 11, 2001. As a result, the Joint Rules Committee, which acts as the administrative arm of the Legislature, determined that increased security measures were necessary at the State Capitol building.

---

[2] All further references to the Constitution are to the state Constitution unless otherwise specified.

[3] References to an undesignated section are to the Government Code.

[4] The Capitol Project has been completed and to that extent the case is moot. However, plaintiff seeks declaratory relief regarding the underlying issues in the case involving the jurisdiction of General Services in controlling works of construction initiated by contract with the Legislature. Accordingly, we will resolve the issues tendered. (See *Department of General Services v. Superior Court* (1978) 85 Cal.App.3d 273, 279 [147 Cal.Rptr. 422].)

On July 1, 2005, the Senate and Assembly Rules Committees entered into a contract with Howard S. Wright Construction Company for construction of the Capitol Project. The project provided for the erection of vehicle barriers around Capitol Park and the construction of two visitor pavilions to serve as controlled public entrances to the Capitol building. The single clause in the contract that is the driving factor in this litigation is the requirement that the contractor and subcontractors employ an all-union workforce.

The Joint Rules Committee requested that the Department assume the task of managing the construction project and through the Assembly Committee on Rules entered into an interagency agreement with the Department to manage the Capitol Project.

The trial court found that the Legislature, not General Services, was the contracting party, that the Legislature was not subject to the State Contract Act or its competitive bidding requirements, and that General Services's involvement in the project as the project manager did not trigger the application of the State Contract Act to the Legislature. The court also found that General Services had no contracting power to delegate, as that power resided exclusively with the Legislature. The court further found there was no violation of the separation of powers clause of the Constitution on the ground the letting of a contract for building or repair work is not exclusively an executive function.

## FACTS RELATING TO THE LEGISLATIVE OPEN RECORDS ACT

On December 5, 2005, plaintiff made a request pursuant to LORA for certain writings, including e-mail communications. The request was sent to the Legislature, its Rules Committees, and individual members of the Rules Committees. The requests sought documents related generally to the administration of public contracts for construction projects involving the State Capitol, and specifically to the requirement in the Capitol Project contract that the work be performed by union-only contractors and subcontractors.[5]

The Senate, Assembly, and Joint Committees on Rules responded on behalf of all recipients of the request, pursuant to section 9074, which states that the appropriate Committee on Rules is deemed to have custody of all legislative

---

[5] The request in full was for:

"1. All records and writings that authorize the California Legislature, its Senate Rules Committee, the Assembly Rules Committee, the Joint Legislative Rules Committee, the Chairman of such committees or the individual members of said committees, the California Senate or the California Assembly members or their staff to:

"a. administer public contracts for construction projects involving California's State Capitol;

records and is solely responsible for making them available for inspection. The identical responses related that LORA provides a number of exemptions from disclosure, specifically for (1) preliminary drafts, notes, or legislative memoranda; (2) correspondence of and to individual members of the Legislature and their staffs; and (3) records that are exempted or prohibited from disclosure pursuant to provisions of federal or state law, including evidentiary privileges.

The responses contained (1) the contract between the Legislature and Howard S. Wright Construction Company for the construction of the Capitol Project, (2) section 01310 of the project manual referenced in the contract, (3) addendum No. 1 to the project manual, and (4) a form outlining the procedure for examining legislative records. They stated that these documents were responsive to categories 3 and 4 of the request and that the committee was not in possession of any additional documents responsive to these or any other categories of the request, or that the documents it had fell within one of the statutory exemptions.

Thereafter, plaintiff directed a near-identical request to the Director of the Department of Finance and to the director of General Services. The Department of Finance had no records responsive to the request, but General Services produced several documents, including copies of e-mails, some of which were internal to General Services, and some of which were between

---

"b. authorize or require construction projects involving the State Capitol to be limited to 'union only' bidders, contractors, and/or subcontractors;

"c. authorize the Legislature or its committees to deal with the use of 'union only' provisions, restrictions or limitations;

"d. allow the Legislature to avoid complying with State Contract Acts and requirements;

"e. allow the use of 'union only' contracts where federal monies have been received or expended for the project; and

"f. allow the Legislature rather than the Department of General Services to oversee or control construction contracts involving the California State Capitol.

"2. All records and writings that indicate whether federal monies have funded part of the costs of the Capitol Park Safety and Security Improvements Project.

"3. All legislative records and writings that indicate or relate to whether the bidding and contracts for the Capitol Park Safety and Security Improvements Project were to be union only or not.

"4. The written guidelines stating the procedures to be followed when making legislative records available for inspection as required by Government Code section 9074.

"5. All records and writings relating to giving instructions or directions to the California Department of General Services during 2002, 2003, 2004 and 2005 to add a statement to the bid specifications for the Capitol Park Safety and Security Improvements Project requiring bidders to be union and to use an all-union workforce. Include the name or title of the originating source of said instructions and directions.

"6. All records and writings, during 1995 to the present, indicating or relating to a legislative vote to limit bidding or the performance of construction contracts to union companies, including the legislative vote thereon."

General Services staff and Senate Rules Committee staff. Also included were handwritten notes taken at two meetings.

Approximately one month after General Services answered the document request, plaintiff filed its complaint in this action seeking injunctive and declaratory relief. Plaintiff alleged defendants violated LORA by, inter alia, failing to search for records and failing to properly identify records not produced.

Plaintiff's first application for an order declaring that defendants violated LORA and made an unlawful expenditure of public funds by requiring the work to be performed by a union-only workforce, was denied. With respect to the claim that defendants had violated LORA, the trial court found that "LORA specifically provides exemptions from disclosure of records that are any of the following: 'Correspondence of and to individual Members of the Legislature and their staff.' [Citation.]" Defendants claimed all documents withheld were either protected by this exception or by the attorney-client privilege. The trial court found no reason to disbelieve defendants' representation that all nonprivileged or nonexempt documents had been produced. The court also gave plaintiff leave to request a further hearing to determine plaintiff's challenges to the legality of the union-only condition of the construction contract.

Plaintiff's second motion argued the requirement of an all-union workforce was unlawful because no action authorized the all-union workforce provision in the contract, because the provision discriminated against certain bidders and interfered with competitive bidding, because General Services unlawfully delegated its contracting responsibilities to the Legislature, and because the provision violated the separation of powers. Plaintiff also sought a declaration that the Legislature's interpretation of LORA was unconstitutional.

Plaintiff's second motion was also denied. The trial court found that the Legislature's interpretation of LORA did not violate the Constitution because article I, section 3, subdivision (b)(6) of the Constitution provides that the protections for the confidentiality of proceedings and records of the Legislature is not repealed, nullified, superseded, or modified, and because article IV, section 7, subdivision (c)(1)(B) of the Constitution allows each house and committee of the Legislature to have closed sessions "[t]o consider matters affecting the safety and security of Members of the Legislature or its employees or the safety and security of any buildings and grounds used by the Legislature."

## DISCUSSION

## I

### The Capitol Project Contract Did Not Violate the Separation of Powers

Plaintiff first argues that the Legislature's act of contracting for the Capitol Project violated the separation of powers doctrine set forth in the Constitution at article III, section 3.[6] Plaintiff further argues, that even if the Legislature had passed a statute allowing it to enter into the contract, such an activity is not within the core functions of the legislative branch.

█ The separation of powers doctrine limits the authority of one branch of government to appropriate the core powers of another branch. (*Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 297 [105 Cal.Rptr.2d 636, 20 P.3d 533] (*Carmel Valley*).) "The purpose of the doctrine is to prevent one branch of government from exercising the *complete* power constitutionally vested in another [citation]; it is not intended to prohibit one branch from taking action properly within its sphere that has the *incidental* effect of duplicating a function or procedure delegated to another branch." (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 117 [145 Cal.Rptr. 674, 577 P.2d 1014].) However, "[t]he doctrine has not been interpreted as requiring the rigid classification of all the incidental activities of government, with the result that once a technique or method of procedure is associated with a particular branch of the government, it can never be used thereafter by another." (*Parker v. Riley* (1941) 18 Cal.2d 83, 90 [113 P.2d 873].)

█ "A legislative assembly, when established, becomes vested with all the powers and privileges which are necessary and incidental to a free and unobstructed exercise of its appropriate functions. These powers and privileges are derived not from the Constitution; on the contrary, they arise from the very creation of a legislative body, and are founded upon the principle of self-preservation. The Constitution is not a grant, but a restriction upon the power of the Legislature, and hence an express enumeration of legislative powers and privileges in the Constitution cannot be considered as the exclusion of others not named unless accompanied by negative terms. A legislative assembly has, therefore, all the powers and privileges which are necessary to enable it to exercise in all respects, in a free, intelligent, and impartial manner, its appropriate functions, except so far as it may be

---

[6] Article III, section 3 of the Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

restrained by the express provisions of the Constitution, or by some express law made unto itself, regulating and limiting the same." (*Ex parte McCarthy, supra,* 29 Cal. at p. 403.) The core functions of the Legislature include passing laws, levying taxes, and making appropriations. (*Carmel Valley, supra,* 25 Cal.4th at p. 299.)

■ However, the Legislature has the power to engage in activity that is incidental or ancillary to its lawmaking functions. (*Parker v. Riley, supra,* 18 Cal.2d at p. 89.) In determining whether an activity is incidental to the Legislature's appropriate function, we look to the history of the parliamentary common law against which the fundamental charter of our state government was enacted, and which is implicit in the Constitution's separation of powers. (*People's Advocate, Inc. v. Superior Court* (1986) 181 Cal.App.3d 316, 322 [226 Cal.Rptr. 640].) Among the powers and privileges a legislative assembly takes by virtue of its creation is the power "[t]o protect itself and its members from personal violence." (*Ex parte McCarthy, supra,* 29 Cal. at p. 404.)

This legislative power, which is intrinsic to article III, section 3 of the Constitution, is expressly recognized in article IV, section 7, subdivision (c)(1)(B) of the Constitution. It provides that closed sessions of the Legislature may be held "[t]o consider matters affecting the safety and security of Members of the Legislature or its employees or the safety and security of any buildings and grounds used by the Legislature." (*Ibid.*) The right of the Legislature to consider such matters clearly implies the right to act substantively to protect the safety and security of its members, and that includes the power to contract for the construction of facilities to provide for such safety.

II

The Department of General Services Has Not Been
Delegated Contractual Authority over Safety Matters
Involving the Legislature

Plaintiff next argues that if the Legislature had the power to contract for the safety of its members, it delegated the authority to bid, award, manage, and oversee construction projects on state property to General Services by enacting section 14600, and that once delegated, the Legislature may not usurp the authority without enacting new statutory authority. We disagree.

■ The Legislature may delegate its incidental powers. (*Parker v. Riley, supra,* 18 Cal.2d at pp. 90–91.) It may select the means, within reasonable bounds, of accomplishing ancillary and subordinate tasks, and is not precluded from delegating them to committees, boards, commissions, or individuals. (*Ibid.*) However, the Legislature has not delegated its authority to contract for the Capitol Project, except as it has done so to its committees.

■ The Constitution provides that the Legislature may "provide for the selection of committees necessary for the conduct of its business . . . ." (Cal. Const., art. IV, § 11.) ■ The Legislature has created the Joint Rules Committee by statute and has promulgated joint rule 40, which gives the committee the power "[t]o contract with other agencies, public or private, for the rendition and affording of services, facilities, studies, and reports to the committee as the committee deems necessary to assist it to carry out the purposes for which it is created" and "[t]o do any and all other things necessary or convenient to enable it fully and adequately to exercise its powers, perform its duties, and accomplish the objects and purposes of this rule." (§ 9107; Joint Rules of the Sen. & Assem., rule 40(d), (*l*).)[7]

While the Legislature's power to contract is not unlimited, the contract at issue falls within the ancillary power of the Legislature to carry out its lawmaking functions because, as noted, it is an action taken to protect the safety of the Legislature and its members, and the Legislature could properly delegate such incidental power to its Joint Rules Committee.

Plaintiff argues that the Legislature delegated this ancillary authority to General Services when it created the Department for the express purpose of the "centralization of business management functions and services of [the] state government" including "planning, acquisition, construction, and maintenance of state buildings and property." (§ 14600.) However, the authority to engage in "business management functions and services" does not necessarily entail the authority to contract for them. Rather, the extent of the authority of General Services over state property and to enter into contracts on behalf of state agencies is to be found in other provisions of the codes.

Section 9110, subdivision (a) provides that: "The *maintenance and operation* of all of the State Capitol Building Annex[, an annex to the historical State Capitol building (Gov. Code, § 9105),] is under the control of the Department of General Services, subject to this article." (Italics added.) Section 9108 provides that the "first floor of the State Capitol Building Annex is excepted from the provisions of this article. Such excepted space shall continue under the control of the Department of General Services. All other space in the State Capitol Building Annex shall be allocated . . . by the Joint Rules Committee . . . ."

Section 9124, subdivision (b) provides that the "Department of General Services shall provide maintenance and operation services in connection with the legislative office facilities as requested by the Legislature."

---

[7] In 1984, voters approved Proposition 24, which, inter alia, repealed section 9107. (See Historical and Statutory Notes, 32C West's Ann. Gov. Code (2005 ed.) foll. § 9026, p. 36.) However, that repeal was held invalid by *People's Advocate, Inc. v. Superior Court, supra,* 181 Cal.App.3d at page 327.

However, none of these provisions apply to this case. The Capitol Project is not in the State Capitol Annex, nor does it purport to allocate space in the annex or involve its maintenance and operation. Rather the project involves the construction of vehicle barriers on the perimeter of the grounds surrounding the State Capitol building and visitor pavilions to control access to the State Capitol building.

## III

### The Public Contract Code Does Not Apply to Contracts by the Legislature

Plaintiff further argues that when the Legislature enters into a contract it is subject to the State Contract Act and to the provisions which require that the contract be let by competitive bid. Again, we disagree.

■ "The Public Contract Code contains detailed provisions and requirements with regard to the acquisition of goods and services by state agencies." (58 Cal.Jur.3d (2004) State of Cal., § 65, p. 235, citing Pub. Contract Code, § 10290 et seq.) "The procedure prescribed by law calls for competitive bidding . . . ." (58 Cal.Jur.3d, *supra*, § 65, p. 236, citing Pub. Contract Code, § 10300 et seq.) In particular, Public Contract Code section 10295, subdivision (a), requires the approval by General Services of "contracts entered into by any state agency for . . . (3) the construction, alteration, improvement, repair, or maintenance of property, real or personal . . . ." However, subdivision (c)(5) of that same section provides that the provision does not apply to "[a]ny contract let by the Legislature."

■ This court has determined that projects in the legislative domain are outside the State Contract Act because the act, "embraces projects within the jurisdiction of the Department of General Services and certain other departments in the *executive* branch of state government." (*Department of General Services v. Superior Court, supra,* 85 Cal.App.3d at p. 280.)[8]

Plaintiff points to the fact that the money for the Capitol Project was transferred to the Architecture Revolving Fund, which contains funds "for expenditure on work within the powers and duties of the Department of General Services with respect to the construction, alteration, repair, and

---

[8] Former section 9124 is the subject of *Department of General Services v. Superior Court, supra,* 85 Cal.App.3d at page 273. The section directed that the " 'Joint Rules Committee shall cause the restoration or rehabilitation of the west wing of the State Capitol . . .' " and included a provision exempting the work from " 'the provisions of the State Contract Act' " except that it is subject to competitive bidding unless jointly determined by the State Architect, the State Public Works Board and the Joint Rules Committee to be impractical or infeasible. (*Id.* at

improvement of state buildings, including, but not limited to, services, new construction, major construction and equipment, minor construction, maintenance, improvements, and equipment, and other building and improvement projects . . . ." (§ 14957, subd. (a).)

Plaintiff argues that this implies that the funds for the Capitol Project were subject to competitive bidding under the State Contract Act because they may be used only "for expenditure on work within the powers and duties of the Department." We disagree.

The powers accorded the Department by the interagency agreement with the Joint Rules Committee were to provide services to manage the construction of the Capitol Project. Management involved the payment of monies for the construction to the contractor and in that sense was within the powers of the Department.

Thus, because the Legislature retained its constitutional authority over the "safety and security of any buildings and grounds used by the Legislature" (Cal. Const., art. IV, § 7, subd. (c)(1)(B)) and delegated its authority to contract for the Capitol Project to the Joint Rules Committee, it did not delegate such power to General Services. Rather, in entering into the interagency agreement with General Services, the Joint Rules Committee employed General Services's management skills, consistent with section 14600, to superintend the construction of the vehicle barriers around the Capitol and the visitor pavilions at the north and south annex entrances to the Capitol building.

## IV

### The Legislature Did Not Wrongfully Withhold Documents

#### A. *Proposition 59 Did Not Nullify LORA Exemptions*

LORA was enacted in 1975. (Stats. 1975, ch. 1246, § 1, p. 3206.) It generally provides for the open access of "information concerning the conduct of the people's business by the Legislature . . . ." (§ 9070.) LORA

---

p. 277, fn. 1.) The section also provided that " '[a]ll work of restoration or rehabilitation shall be administered and supervised by the Department of General Services and subject to review by the State Public Works Board pursuant to agreement with the Joint Rules Committee.' " (*Ibid.*)

Former section 9124 (Stats. 1975, ch. 246, § 1, p. 639, amended by Stats. 1978, ch. 25, § 2, p. 111, repealed by Stats. 1989, ch. 1366, § 1, p. 5905), concerned the restoration of the west wing of the Capitol building.

The court held that the trial court erred in construing former section 9124 to provide for " 'competitive bidding in accordance with the provisions of the State Contract Act' . . . ." (*Department of General Services v. Superior Court, supra,* 85 Cal.App.3d at p. 285.)

also specifies several categories of records that are exempt from disclosure, in particular, "[c]orrespondence of and to individual Members of the Legislature and their staff," and "[r]ecords the disclosure of which is exempted or prohibited pursuant to provisions of federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (§ 9075, subds. (h), (i).) As is relevant here, the language of section 9075, subdivisions (h) and (i) has remained unchanged since LORA was enacted in 1975.

 In 2004, the voters approved Proposition 59, which added subdivision (b) to section 3 of article I of the Constitution. Like LORA, it provided generally for the open access to "information concerning the conduct of the people's business." (Cal. Const., art. I, § 3, subd. (b)(1).) Unlike LORA, it also provided for access to "the meetings of public bodies" as well as the writings of public officials and agencies. (Cal. Const., art. I, § 3, subd. (b)(1).)

Subdivision (b)(5) and (6) of article I, section 3 of the Constitution states:

"(5) This subdivision does not repeal or nullify, expressly or by implica-tion, any constitutional or statutory exception to the right of access to public records or meetings of public bodies that is in effect on the effective date of this subdivision, including, but not limited to, any statute protecting the confidentiality of law enforcement and prosecution records.

"(6) Nothing in this subdivision repeals, nullifies, supersedes, or modifies protections for the confidentiality of proceedings and records of the Legisla-ture, the Members of the Legislature, and its employees, committees, and caucuses provided by Section 7 of Article IV,[9] state law, or legislative rules adopted in furtherance of those provisions; nor does it affect the scope of permitted discovery in judicial or administrative proceedings regarding delib-erations of the Legislature, the Members of the Legislature, and its employ-ees, committees, and caucuses."

Plaintiff claims section 3, subdivision (b)(6) of article I of the Constitution must be read to embrace only those exemptions of article IV, section 7 and to ignore the exemptions provided by "state law, or legislative rules adopted in furtherance of those provisions." In support of this claim, plaintiff offers the maxims *ejusdem generis* and *noscitur a sociis*. Neither of these aids to construction has any application here because the constitutional language is not ambiguous, and because the language is not amenable to their application.

---

[9] Constitution, article IV, section 7, subdivision (c)(1) provides in pertinent part: "The proceedings of each house and the committees thereof shall be open and public. However, closed sessions may be held solely for any of the following purposes: [¶] . . . [¶] (B) To consider matters affecting the safety and security of Members of the Legislature or its employees or the safety and security of any buildings and grounds used by the Legislature."

■ The first principle of statutory or constitutional interpretation is to ascertain the intent of the enactors. We determine intent by first looking to the language of the text. " 'If the language is clear, there is no need for construction.' " (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037 [56 Cal.Rptr.3d 814, 155 P.3d 226].) Only if the language is ambiguous is it necessary to resort to evidence of the intent of the Legislature in the case of a statute, or the voters in the case of an initiative. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].)

■ *Ejusdem generis* is an aid to be used if the language is ambiguous. (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 671 [29 Cal.Rptr.2d 152, 871 P.2d 204].) In this case, the constitutional language presents no ambiguity. Proposition 59 expressly does not change or repeal any exemption to disclosure provided by article IV, section 7 of the Constitution, by state law, or by legislative rules adopted in furtherance of state law or article IV, section 7. (Cal. Const., art. I, § 3, subd. (b)(6).) The exemptions specified in LORA are state law exemptions. (See § 9075, subds. (h), (i).) The mere coupling of these exemptions with those in a particular constitutional provision does not create an ambiguity.

■ Judicial construction should not render part of the statute meaningless or inoperative. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715–716 [3 Cal.Rptr.3d 623, 74 P.3d 726].) Plaintiff's construction, which would limit exemptions to those set forth in Constitution, article IV, section 7, would render two of the three enumerated exemptions meaningless or inoperative. " '[A] statute will be given its full effect, as far as possible, and will be so construed that the whole may stand, and that each part thereof may have the meaning and effect which, from the act as a whole, appears to have been intended.' [Citation.]" (*People v. Silver* (1940) 16 Cal.2d 714, 721 [108 P.2d 4].) Plaintiff's construction is contrary to the principles of interpretation we are bound to follow.

■ Moreover, these maxims of construction are simply inapplicable here. *Ejusdem generis* is a subset of *noscitur a sociis*, which means the meaning of a word may be known from the accompanying words. (*Martin v. Holiday Inns, Inc.* (1988) 199 Cal.App.3d 1434, 1437 [245 Cal.Rptr. 717].) *Ejusdem generis* is typically applied to phrases that list several specific items, then refer to a general reference, using the term "other." (*Texas Commerce Bank v. Garamendi* (1992) 11 Cal.App.4th 460, 473 [14 Cal.Rptr.2d 854].) "Other" being an inherently ambiguous term, the specific items enumerated are used to qualify the more general item.

However, *ejusdem generis* " 'is by no means a rule of universal application, and its use is to carry out, not to defeat, the legislative intent. When it

can be seen that the particular word by which the general word is followed was inserted, not to give a coloring to the general word, but for a distinct object, and when, to carry out the purpose of the statute, the general word ought to govern, it is a mistake to allow the *ejusdem generis* rule to pervert the construction.' " (*Hunt v. Manning* (1914) 24 Cal.App. 44, 48 [140 P. 39].)

 In this case the exception to the rule of disclosure set forth in article IV, section 7 of the Constitution is a distinct object from legislative statutes and rules. Proposition 59 pertains to the right of access to both government documents and "meetings of public bodies." (Cal. Const., art. I, § 3, subd. (b)(1).) The exception contained in article IV, section 7 refers specifically to the "proceedings" of the Legislature, and allows "closed sessions" for specified purposes. (Cal. Const., art. IV, § 7, subd. (c)(1).) LORA, on the other hand, applies not to the proceedings of the Legislature, but to the disclosure of its records. (See § 9070 et seq.) Thus, the specifically enumerated exceptions in Proposition 59 are qualitatively different, one applying to proceedings (Cal. Const., art. IV, § 7), one applying to documents (state law), and one applying to both (legislative rules). Because they are different, it cannot be said that the electorate intended one example (Cal. Const., art. IV, § 7) to restrict the other examples (state law and legislative rules). For this reason, we also reject plaintiff's claim that the provisions of Proposition 59 conflict with the terms of LORA.

 Plaintiff also argues that the exemptions set forth in LORA and claimed by defendants conflict with the "sunshine" policies of LORA and Proposition 59, and therefore violate the public's right of access. However, neither the language of Proposition 59, nor the exemption provisions under LORA are ambiguous provisions in need of interpretation through the vehicle of the statute's public policy. Proposition 59 expressly did not repeal, nullify, supersede, or modify the exemptions set forth in LORA. (Cal. Const., art. I, § 3, subd. (b)(6).) LORA, in turn, expressly exempts from disclosure "[c]orrespondence of and to individual Members of the Legislature and their staff . . . ." (§ 9075, subd. (h).) A public policy argument serves to resolve the ambiguities of a statute, but it does not alone stand superior to the express terms of the statute.[10] (*Garcia v. County of Sacramento* (2002) 103 Cal.App.4th 67, 75 [126 Cal.Rptr.2d 465].)

---

[10] We underscore that there is no "as applied" challenge here. In other words, there is no claim that the particular documents withheld do not clearly fall within the exemption of "[c]orrespondence of and to individual Members of the Legislature and their staff." (§ 9075, subd. (h).) Instead, the claim is that we should construe the statutory exemption narrowly such that *any* documents described under the exemption were improperly withheld because the LORA exemptions inherently conflict with the public's right of access protected by the Constitution.

Accordingly, the exemptions to the disclosure requirements found in LORA are applicable here, and are not restricted to the subject of the safety and security of the Legislature found in Constitution, article IV, section 7.[11]

### B. *Defendants Complied with LORA*

Plaintiff argues defendants' response to the records request did not comply with LORA's requirements that if any records were exempt from inspection the defendant "justify in writing the withholding of such record by demonstrating that the record in question is exempt under the express provisions of this article." (§ 9074.) Plaintiff claims defendants' response was "conclusory and unsupported."

Relevant to the claims of exemption, defendants' response stated as follows: "The [LORA] provides for a number of categories of documents that are exempt from the act's mandatory disclosure provisions. For example, the act exempts from mandatory production '[p]reliminary drafts, notes, or legislative memoranda;' '[c]orrespondence of and to individual Members of the Legislature and their staff;' and '[r]ecords the disclosure of which is exempted or prohibited pursuant to provisions of federal or state law,' which would include various evidentiary privileges (subds. (a), (h), and (i), Sec. 9075, Gov. C.; see also Sec. 1040, Evid. C.)." The response then lists the documents being produced, and concludes: "Upon reviewing our records, we find we are not in possession of any additional documents that are responsive to Categories 3 or 4 or to any of the other four categories of documents in your request, or the documents we do have fall within statutory exemptions."

Plaintiff concedes that pursuant to the authority of *Haynie v. Superior Court* (2001) 26 Cal.4th 1061, 1074–1075 [112 Cal.Rptr.2d 80, 31 P.3d 760], defendants were not required to produce the equivalent of a privilege log, but argue defendants were required to specify the exemptions upon which they relied.

*Haynie v. Superior Court, supra,* 26 Cal.4th 1061, did not involve LORA, but it interpreted a section of the California Public Records Act (§ 6250 et seq.) containing near identical language to the section at issue here. In that case the plaintiff argued that a duty to create a log of documents exempt from disclosure could be inferred from the language of section 6255, which, like section 9074, required the public agency to "justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public

---

[11] In light of this conclusion, we need not address plaintiff's argument that the legislative records regarding the contract were not protected by Constitution, article IV, section 7.

interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (26 Cal.4th at p. 1074.)

The Supreme Court held that the California Public Records Act required the public agency to articulate the exemption being claimed, and that in so doing it would "necessarily reveal the general nature of the documents withheld." (*Haynie v. Superior Court, supra,* 26 Cal.4th at p. 1074.) However, the court held it was not necessary for the public agency to describe each document falling within a claimed exemption. (*Ibid.*)

In the present case, the response to the document request could have been worded more directly by assertively stating that the records were being withheld pursuant to the exemption for correspondence of and to members of the Legislature and their staff, and the exemption from disclosure pursuant to the law of privilege, rather than describing these as examples of documents that are exempt from disclosure. However, these were the exemptions pursuant to which records were being withheld, and both these exemptions were specifically set forth in the response. This response was sufficient to comply with LORA.

Plaintiff also points to documents that were disclosed during the course of the litigation, but not disclosed in response to the initial LORA request, and claims these documents prove defendants did not comply with LORA. However, the later produced documents were not responsive to plaintiff's initial request.

Broadly speaking, the initial request was for all records authorizing the Legislature to (1) administer public contracts for construction at the Capitol, (2) require the projects to be limited to union bidders, (3) include union-only provisions, (4) avoid compliance with the State Contract Act, (5) allow union-only contracts where federal money was received, and (6) oversee the construction. Also requested were records involving federal funds and union-only bidding.

The hearing minutes that were produced during litigation pertained to a Joint Rules Committee meeting on March 14, 2002, to consider the security perimeter options presented by the California Highway Patrol (CHP), and to vote on the various options. The meeting minutes do not reflect any effort to administer or authorize the public contract for construction. Nor do they mention federal funds, union-only requirements, or the State Contract Act. The only purposes of the meeting were to choose one of the presented options for the security perimeter and to request the CHP Commissioner to provide the most expeditious completion of the project by emergency declaration, if appropriate. Therefore, the minutes did not respond to plaintiff's

original LORA request, and defendants did not violate LORA by failing to produce the documents earlier.[12]

### C. *The Legislature Did Not Waive the Right to Withhold Documents.*

Plaintiff argues that defendants have waived the right to withhold documents on two grounds: (1) by failing to comply with LORA by not describing the nature of the records withheld, and (2) by General Services's disclosure of some documents. With respect to the first ground, we have determined that defendants' response to the document request did not violate LORA; therefore, there has been no violation that would constitute a waiver.

■ With regard to plaintiff's second argument, we conclude that the statutory exemptions from disclosure are not the equivalent of evidentiary privileges, which may be waived by disclosure. Privilege, as defined by the Evidence Code, relates to proceedings in which testimony may be compelled by law to be given. (Evid. Code, § 901.) Plaintiff cites no authority to support its claim that an exemption to LORA's open records policy is to be treated as if it were an evidentiary privilege subject to waiver if disclosed, and we are aware of no such authority.

■ LORA contains its own enforcement mechanism. A person may institute proceedings to enforce the right to inspect legislative records, and may obtain a contempt order if such records are not disclosed pursuant to court order. (§§ 9076, 9077.) LORA does not provide for waiver of exemptions. We will not engraft penalties onto the legislative scheme that the statutes cannot fairly be read to contain.

---

[12] Plaintiff argues former section 9030 imposed misdemeanor liability on each member who attended the March 14, 2002, meeting with knowledge there was no proper public notice of the meeting. This argument was not raised below and no evidence was presented on the issue. We will not consider the issue for the first time on appeal. Moreover, former section 9030 was repealed by Proposition 24, approved by the voters in 1984. Plaintiff asserts the terms of former section 9030 were reenacted in former section 9929. (Stats. 1989, ch. 1235, § 10, p. 4820.) However, that section has also been repealed. Plaintiff's argument in its reply brief that the Legislature's repeal of former section 9929 violated the people's constitutional initiative rights is waived for failing to raise it in the opening brief. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4 [27 Cal.Rptr.3d 648, 110 P.3d 903].)

Plaintiff requests we take judicial notice of the Legislature's Internet site (<www.leginfo.ca.gov> [as of Aug. 19, 2008]) showing laws currently in effect, including former section 9030. The request is denied. The Web site was not brought to the attention of the trial court. The Web site is not the official printed Government Code, and makes no promises regarding its accuracy. Plaintiff also requests we take judicial notice of the chaptered version of Assembly Bill No. 427 (1989–1990 Reg. Sess.) (Stats. 1989, ch. 1235, § 1, p. 4818), repealing former section 9929. As the issue for which judicial notice is requested has been waived for failing to raise it in the opening brief, the request is denied.

■ Plaintiff argues the inconsistency in allowing the Legislature to withhold correspondence between its members and staff on the one hand and General Services on the other, while not similarly allowing General Services to withhold the correspondence, leads to absurd results. This situation is the result of LORA containing an exemption for "[c]orrespondence of and to individual Members of the Legislature" (§ 9075, subd. (h)), while the California Public Records Act contains no similar exemption for state agencies (see § 6254 et seq.). However, regardless of any seeming inconsistency, the language of these statutes is clear, and "[w]here the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) Accordingly, we will not simply ignore the express exemption for correspondence of and to legislative members and their staff merely because the correspondence of other state agencies is not similarly exempt.

V

The Capitol Project Was Not a Misuse of Public Funds

Plaintiff contends the Capitol Project was a misuse of public funds because it unlawfully confined bidding to union-only contractors in violation of the doctrine of separation of powers and the competitive bidding requirements of the State Contract Act, and because the Legislature did not use federal funds for the Capitol Project. The argument is flawed because there was no violation of separation of powers, the Legislature was not bound by the State Contract Act, and it was not required to use federal funds for the project.

The construction contract was entered into by the Senate and Assembly Rules Committees. General Services was not a party to the contract, although the Rules Committees hired General Services to manage the construction contract through an interagency agreement. Thus, assuming the contract did not comply with the competitive bidding requirements of the State Contract Act, such noncompliance was not unlawful because the Legislature was not bound by the act.

Plaintiff argues federal funds should have been used to fund the project, but cites no law mandating such federal funding. Plaintiff points to a news release from the Governor of Missouri, and asserts that because Missouri used "federal homeland security funds designed to protect the state against terrorist threats" to fund, among other things, "an emergency response team for the State Capitol complex" the Legislature was required to spend California's homeland security funds on the Capitol Project.

No evidence was presented below to indicate how federal homeland security funds are allocated by the state, who has the authority to allocate such funds, what types of projects are eligible, how projects are prioritized, or whether any funding was available for the Capitol Project in question. On this record we cannot hold that the Capitol Project was a misuse of funds because no federal funds were used.

## DISPOSITION

The judgment is affirmed. Each party shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

Davis, J., and Cantil-Sakauye, J., concurred.

A petition for a rehearing was denied September 16, 2008, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 19, 2008, S167120.