CHIN, J.,
Dissenting.—I dissent. In August 2014, this court correctly removed Proposition 49 from the ballot. It should now prevent a similar measure from being placed on the ballot in the future. Placing advisory measures on the ballot—a right denied even to the people (American Federation of Labor v. Eu (1984) 36 Cal.3d 687 [206 Cal.Rptr. 89, 686 P.2d 609] (American Federation))—is no part of the legislative function and does not come within either the Legislature’s lawmaking or ancillary powers.
*580 I. Factual and Procedural Background
In 2014, the Legislature adopted a resolution urging Congress to call a constitutional convention to propose an amendment to the United States Constitution that would overrule the decision in Citizens United v. Federal Election Comm’n (2010) 558 U.S. 310 [175 L.Ed.2d 753, 130 S.Ct. 876] (Citizens United). (Assem. J.Res. No. 1, Stats. 2014 (2013-2014 Reg. Sess.) res. ch. 77.) The Legislature also enacted Senate Bill No. 1272 (2013-2014 Reg. Sess.) (Senate Bill 1272). (Stats. 2014, ch. 175.) That bill directed the Secretary of State to submit an “advisory question to the voters” at the November 2014 election asking whether Congress should propose, and the Legislature ratify, an amendment to the United States Constitution that would overturn Citizens United. (Stats. 2014, ch. 175, § 4.)
The Governor permitted Senate Bill 1272 to become law without his signature. He issued a statement explaining why he did so: “[T]his bill and the advisory vote it requires has no legal effect whatsoever. The only way to overturn a Supreme Court decision such as Citizens United is by the process outlined in Article V of the United States Constitution. In fact, the California State Legislature recently took action in this regard by approving a joint resolution calling upon Congress to convene a Constitutional convention for this very purpose.” (Gov. Edmund G. Brown, Jr., letter to members of Cal. State Sen., July 15, 2014.) The Governor said he understood the motivation behind the bill because he, too, believes Citizens United was wrongly decided. “But,” he wrote, “we should not make it a habit to clutter our ballots with nonbinding measures as citizens rightfully assume that their votes are meant to have legal effect. Nevertheless, given the Legislature’s commitment on this issue, even to the point of calling for an unprecedented Article V Constitutional Convention, I am willing to allow this question to be placed before the voters. [¶] By allowing SB 1272 to become law without my signature, it is my intention to signal that I am not inclined to repeat this practice of seeking advisory opinions from the voters.” {Ibid.)
The Secretary of State designated the matter Proposition 49 and began preparing to place it on the ballot. Petitioners Howard Jarvis Taxpayers Association et alia (Howard Jarvis) promptly filed a petition for writ of mandate seeking to prevent Proposition 49 from being placed on the ballot. After a divided Court of Appeal denied relief, Howard Jarvis filed the instant petition in this court. In August 2014, we issued an order to show cause and directed the Secretary of State to refrain from taking any further action to place Proposition 49 on the November 2014 ballot.
Our August 11, 2014 order to show cause quoted American Federation’ a explanation of why it is necessary to remove a dubious measure from the *581 ballot: “ ‘The presence of an invalid measure on the ballot steals attention, time and money from the numerous valid propositions on the same ballot. It will confuse some voters and frustrate others, and an ultimate decision that the measure is invalid, coming after the voters have voted in favor of the measure, tends to denigrate the legitimate use of the initiative procedure.’ (American Federation[, supra,] (1984) 36 Cal.3d 687, 697.)” We explained that we issued the stay ‘“[bjecause the proposition’s validity is uncertain, because this court in American Federation made clear that substantial harm can occur if an invalid measure is permitted to remain on the ballot, and because the measure, which the parties agree would have no legal effect, can be placed on a future ballot at the Legislature’s direction if the court ultimately determines it is valid . . . .” Justice Liu issued a separate concurring statement, while the Chief Justice dissented from the issuance of the stay.
After full briefing, the merits of Howard Jarvis’s challenge to Proposition 49 are now before us. Although I disagree with the majority’s resolution of the merits, I agree that we should decide them even though the question is technically moot. The Legislature needs to know whether it can pass a similar measure placing the same advisory question on a future ballot. (Maj. opn., ante, at p. 497.)
II. Discussion
In American Federation, supra, 36 Cal.3d 687, the question was whether the people, invoking the right of initiative, could place on the ballot an advisory measure urging the Legislature to apply to Congress to convene a constitutional convention to propose that the United States Constitution be amended to require a balanced federal budget. (Id. at pp. 690-691.) We held that the people could not do that because the advisory measure exceeded the scope of the initiative power. (Id. at p. 694.) The question now before us is whether the Legislature can place an advisory measure on the ballot when the people cannot do so themselves. Just as the merits of a balanced budget amendment were irrelevant to the holding in American Federation, so, too, the merits of overturning Citizens United, supra, 558 U.S. 310, are irrelevant to the issue here.
At the outset, I stress that I agree fully that the Legislature’s lawmaking power is plenary. “Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people’s right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly *582 or by necessary implication denied to it by the Constitution. [Citations.] In other words, ‘we do not look to the Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited.’ [Citation.] [¶] Secondly, all intendments favor the exercise of the Legislature’s plenary authority: ‘If there is any doubt as to the Legislature’s power to act in any given case, the doubt should be resolved in favor of the Legislature’s action. Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used.’ ” (Methodist Hosp. of Sacramento v. Saylor (1971) 5 Cal.3d 685, 691 [97 Cal.Rptr. 1, 488 P.2d 161], italics added; accord, County of Riverside v. Superior Court (2003) 30 Cal.4th 278, 284 [132 Cal.Rptr.2d 713, 66 P.3d 718].)
But this plenary lawmaking authority does not apply here. Proposition 49 does not make law. As the Governor explained, and as everyone agrees, it is merely an advisory measure that would have no legal effect even if passed. In one sense, Senate Bill 1272 is a law because it directs the advisory measure to be placed on the ballot. But the action it directs is legally meaningless. The Legislature’s power to pass it cannot be based on its lawmaking authority. If the Legislature has the power to place an advisory measure on the ballot, it must be grounded on something else.
The Legislature also “has the power to engage in activity that is incidental or ancillary to its lawmaking functions.” (The Zumbrun Law Firm v. California Legislature (2008) 165 Cal.App.4th 1603, 1614 [82 Cal.Rptr.3d 525], citing Parker v. Riley (1941) 18 Cal.2d 83, 89 [113 P.2d 873].) As we explained long ago, “[a] legislative assembly, when established, becomes vested with all the powers and privileges which are necessary and incidental to a free and unobstructed exercise of its appropriate functions. These powers and privileges are derived not from the Constitution; on the contrary, they arise from the very creation of a legislative body, and are founded upon the principle of self preservation. The Constitution is not a grant, but a restriction upon the power of the Legislature, and hence an express enumeration of legislative powers and privileges in the Constitution cannot be considered as the exclusion of others not named unless accompanied by negative terms. A legislative assembly has, therefore, all the powers and privileges which are necessary to enable it to exercise in all respects, in a free, intelligent and impartial manner, its appropriate functions, except so far as it may be restrained by the express provisions of the Constitution, or by some express law made unto itself, regulating and limiting the same.” (Ex parte D. O. McCarthy (1866) 29 Cal. 395, 403 [listing several of these powers and privileges].) But these ancillary powers are not unlimited.
Often a limitation on the Legislature’s power is implied rather than expressed in the Constitution. For example, the Legislature may not allow *583 district attorneys to refile accusatory pleadings that have reached final judgments. (People v. King (2002) 27 Cal.4th 29, 34-37 [115 Cal.Rptr.2d 214, 37 P.3d 398].) Similarly, the Legislature may not require a criminal court to obtain a prosecutor’s consent before ordering a juvenile disposition for a minor charged with a serious crime in lieu of a sentence under the Penal Code. (People v. Thomas (2005) 35 Cal.4th 635, 639-642 [27 Cal.Rptr.3d 2, 109 P.3d 564].) These prohibitions derive from the principle of separation of powers. Here, the separation of powers is not among the legislahve, executive, and judicial branches of government but between the Legislature and the people. The power of the ballot belongs to the people.
The California Constitution itself so indicates. “All political power is inherent in the people.” (Cal. Const., art. II, § 1.) “The legislahve power of this State is vested in the California Legislature . . . , but the people reserve to themselves the powers of initiative and referendum.” (Cal. Const., art. IV, § 1.) “The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them.” (Cal. Const., art. II, § 8, subd. (a).)
The Constitution provides three circumstances in which the Legislature must place matters on the ballot if the achon the Legislature proposes is to take effect. First, the Legislature “may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval.” (Cal. Const., art. II, § 10, subd. (c).) Second, “Each measure providing for the preparation, issuance and sale of bonds of the State of California shall hereafter be submitted to the electors in the form of a bond act or statute.” (Cal. Const., art. XVI, § 2, subd. (a), 2d par.) Third, the Legislature “may propose an amendment or revision of the Constitution” (Cal. Const., art. XVIII, § 1), but the “proposed amendment or revision shall be submitted to the electors and if approved by a majority of votes thereon takes effect the day after the elechon unless the measure provides otherwise” (Cal. Const., art. XVIII, § 4). Additionally, a different provision seems to imply that the Legislature may, if it chooses, place a “statute” on the ballot for the electorate to ratify. (Cal. Const., art. II, § 12.)
Because the California Constitution is a restriction on the Legislature’s powers, not a grant of powers, designating these circumstances in which the Legislature may place matters on the ballot does not, by itself, necessarily mean the Legislature may not do so in other circumstances. But those circumstances are designed to protect the people’s right to confirm an action the Legislature proposes, not to give the Legislature general access to the ballot. The overall constitutional scheme shows that the power of the ballot is reserved to the people, not the Legislature.
*584 This brings us to American Federation, supra, 36 Cal.3d 687. As noted, the issue there was whether the people could place on the ballot an advisory measure urging a constitutional amendment to require a balanced federal budget. (Id. at pp. 690-691.) We “conclude[d] that the measure exceeds the scope of the initiative power under the controlling provisions of the California Constitution (art. II, § 8 and art. IV, § 1). The initiative power is the power to adopt ‘statutes’—to enact laws—but the crucial provisions of the balanced budget initiative do not adopt a statute or enact a law. They adopt, and mandate the Legislature to adopt, a resolution which does not change California law and constitutes only one step in a process which might eventually amend the federal Constitution. Such a resolution is not an exercise of legislative power reserved to the people under the California Constitution.” (Id. at p. 694, fn. omitted.) We explained that the initiative ‘“is not a public opinion poll. It is a method of enacting legislation, and if the proposed measure does not enact legislation, or it if seeks to compel legislative action which the electorate has no power to compel, it should not be on the ballot.” (Id. at p. 695.)
We further explained that ‘“the reserved powers of initiative and referendum do not encompass all possible actions of a legislative body. Those powers are limited, under article II [of the California Constitution], to the adoption or rejection of ‘statutes.’. . . [I]t does not include a resolution which merely expresses the wishes of the enacting body, whether that expression is purely precatory or serves as one step in a process which may lead to a federal constitutional amendment.” (American Federation, supra, 36 Cal.3d at p. 708.) We summarized that the initiative ‘“functions ... as a reserved legislative power, a method of enacting statutory law. The present initiative does not conform to that model.” (Id. at p. 715.)
Viewing the constitutional provisions as a whole, it is clear that if this court had reached a different conclusion in American Federation, supra, 36 Cal.3d 687, and held, as the dissent had urged, that the advisory measure was a valid exercise of the initiative power, the Legislature would not have the power to place a measure like Proposition 49 on the ballot. That power would have been reserved to the people.
But it is incorrect to conclude that because the people cannot do it, the Legislature can. As we have said, ‘“the power of the people through the statutory initiative is coextensive with the power of the Legislature.” (Legislature v. Deukmejian (1983) 34 Cal.3d 658, 675 [194 Cal.Rptr. 781, 669 P.2d 17].) If the people cannot place a matter on the ballot, neither can the Legislature. The people can be heard directly only through the ballot, either by electing their representatives or by the initiative or referendum process. The specified circumstances in which the Legislature has recourse to the *585 ballot exist solely to implement the people’s right to accept or reject what the Legislature is proposing. But the Legislature does not otherwise need the ballot. It can act itself. Other than in the constitutionally prescribed circumstances, the Legislature should not be permitted to hijack the ballot to serve its own agenda.
Permitting the Legislature to place advisory measures on the ballot would allow it to greatly interfere with the people’s reserved initiative rights. The Legislature could easily place an advisory measure on the ballot that would compete with an initiative measure. As one commentator explains, “voter confusion often results from the appearance on the ballot of competing ballot initiatives on the same subject, a tactic often used by opponents of the first initiative. Because savvy political actors know that voters frequently react to confusion by voting ‘no’ on both measures, opponents of a particular initiative may work to qualify a competing measure in the hope that it will result either in both being defeated or in the more favorable competing measure being enacted instead of the initial proposal.” (Garrett, Direct Democracy in Research Handbook on Public Choice and Public Law (Farber & O’Connell edits., 2010) p. 155.)
“Voter initiatives have been compared to a ‘ “legislative battering ram” ’ because they ‘ “may be used to tear through the exasperating tangle of the traditional legislative procedure and strike directly toward the desired end.” ’ (Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 228 [149 Cal.Rptr. 239, 583 P.2d 1281].)” (Tuolumne Jobs & Small Business Alliance v. Superior Court (2014) 59 Cal.4th 1029, 1035 [175 Cal.Rptr.3d 601, 330 P.3d 912].) The Legislature might sometimes be hostile to the people’s use of this battering ram and do what it can to defeat an initiative measure. Placing competing measures on the ballot might be one way to do that. No improper motives appear in this case, but the potential, and the temptation, for legislative interference with the people’s power of initiative is real. “In light of the initiative power’s significance in our democracy, courts have a duty ‘ “to jealously guard this right of the people” ’....” (Ibid.) The way to guard against legislative interference with the people’s right of initiative is to leave the ballot for the people’s use, not the Legislature’s.
Citing California Constitution, article I, section 3, subdivision (a), which gives the “people ... the right to instruct their representatives,” the Legislature suggests that placing an advisory measure on the ballot is a way for the people to provide this instruction. But the people themselves cannot place an advisory measure on the ballot. (American Federation, supra, 36 Cal.3d 687.) A constitutional right given the people cannot empower the Legislature to do something the people are prohibited from doing.
*586 The Legislature also argues its ancillary power to investigate gives it the authority to place an advisory measure on the ballot. It does have the power to investigate to support its lawmaking function. The California Constitution expressly provides this power. “The Legislature or either house may by resolution provide for the selection of committees necessary for the conduct of its business, including committees to ascertain facts and make recommendations to the Legislature on a subject within the scope of legislative control.” (Cal. Const., art. IV, § 11.) We described the included power in Ex parte D. O. McCarthy as the power “[t]o investigate, by the testimony of witnesses or otherwise, any subject or matter, in reference to which it has power to act; and, consequently, to protect parties, witnesses and counsel, in their attendance, when summoned, or having occasion to attend for that purpose.” (Ex parte D. O. McCarthy, supra, 29 Cal. at p. 404, italics omitted; see In re Battelle (1929) 207 Cal. 227, 241 [277 P. 725] [similar].)
But the Legislature can, and already does, do all of this. Additionally, as Justice Liu observed in his concurring statement when this court issued the August 11, 2014 order to show cause in this case, “[i]f the Legislature wants to commission Gallup to do a poll on Citizens United,” it may do so. Modern technology, including the Internet, with all of the interaction and exchange of information and views it facilitates, gives the Legislature ample ability to ascertain the electorate’s wishes. It does not need recourse to the ballot to perform its proper function. The potential for interference with the people’s reserved right of initiative greatly outweighs any marginal value an advisory measure might have to aid the Legislature’s investigation into the electorate’s wishes.
The majority confidently asserts that an advisory measure like this one would never compete or interfere with an initiative measure the people placed on the ballot. (Maj. opn., ante, at p. 521, fn. 16.) Maybe, maybe not. I cannot predict what the Legislature might try to do in the future. Perhaps it will never test the accuracy of this assertion. Perhaps this is a one-time event, as the Governor urged. It appears, however, the majority would be willing to prevent a future advisory measure that does threaten to impede the people’s right of initiative. But considering the validity of an advisory measure on a case-by-case basis would entangle the courts in legislative affairs far more than simply concluding the Legislature does not possess a nonlawmaking authority it does not need to function fully and effectively. With the constitutional exceptions, the Legislature does not need access to the ballot. But the ballot is the people’s only way to legislate directly.
The Legislature also cites past occasions in which it placed advisory measures on the ballot—all but one more than a century ago, the most recent in the 1930’s—as showing it has this power. But the Legislature’s power to *587 do so was never challenged. “The obvious answer to this contention is that usage and custom, no matter how long continued, cannot create a right in the legislature that otherwise it does not possess . . . .” (Special Assembly Int. Com. v. Southard (1939) 13 Cal.2d 497, 508-509 [90 P.2d 304].)
The past precedent is also far from impressive. Two of the measures were driven by anti-Chinese immigration sentiment that was prevalent at the time. (See In re Chang (2015) 60 Cal.4th 1169 [185 Cal.Rptr.3d 1, 344 P.3d 288].) In 1877, the Legislature asked the voters to indicate whether they were “ ‘For Chinese Immigration’ ” or “ ‘Against Chinese Immigration.’ ” (Stats. 1877, ch. 5, § 1, p. 3.) In 1891, the Legislature asked the voters whether they were for or against “ ‘an educational qualification requiring every voter to be able to write his name and read any section of the Constitution in the English language.’ ” (Stats. 1891, ch. 113, § 1, p. 115.) This is hardly sterling precedent. Given the anti-Chinese-imntigration sentiment, it is unsurprising no one challenged the Legislature’s authority to place the measures on the ballot.
Measures in 1891, 1909, and 1911 concerned the ultimate passage of the Seventeenth Amendment to the United States Constitution, which gave the people the right to elect United States senators directly. (Stats. 1911, ch. 387, § 1, pp. 704-705; Stats. 1909, ch. 405, § 2, p. 691; Stats. 1891, ch. 48, § 1, pp. 46-47.) Indeed, the 1909 and 1911 measures merely anticipated the Seventeenth Amendment’s ratification by allowing the voters to state who should serve as United States senators. Because the measures supported the electorate’s direct voting right, it is unsurprising no one challenged them on this basis.
Finally, one month before the 1933 election, the Legislature placed advisory measures on the ballot asking two questions regarding whether it should divert money from the gasoline tax funds for specified purposes. (Stats. 1933, ch. 435, § 3, p. 1126.) The measures were defeated at the polls. (Propositions Submitted to Vote of Electors, Special Election (June 27, 1933) Measured Defeated, Nos. 9, 10, Stats. 1933, p. xc.) Because the measures were placed on the ballot only a month before the election and were then defeated, it is also unsurprising that no one challenged them.
Thus, the most recent of these advisory measures occurred over eight decades ago, long before the development of modern polling techniques, the Internet, and other methods of ascertaining the people’s wishes in political matters. As Justice Liu aptly notes, “If anything, the paucity of historical examples, with none in the last 80 years, tends to cast doubt on the existence and validity of the power claimed here.” (Conc. opn. of Liu, J., ante, at p. 572.)
*588 The Legislature also argues that the power to place Proposition 49 on the ballot derives from article V of the United States Constitution. As relevant, that article provides that “on the application of the legislatures of two-thirds of the several states,” Congress “shall call a convention for proposing amendments” to the Constitution. This provision certainly gives the Legislature the power to apply to Congress to call a convention for that purpose. I have no doubt that allowing the Legislature to place an advisory measure like Proposition 49 on the ballot would not violate article V. (See Bramberg v. Jones (1999) 20 Cal.4th 1045, 1058 [86 Cal.Rptr.2d 319, 978 P.2d 1240].) Indeed, as the Legislature notes, many states have permitted their legislatures to do so. But nothing in article V compels a state to permit advisory measures like Proposition 49 when doing so would infringe on a constitutional right reserved to the people.
Given all the other powers the Legislature has, including the right to investigate, it does not need the additional power to place advisory measures on the ballot in order to exercise its United States Constitution, article V authority. Depriving the Legislature of this power does not materially affect its ability to exercise this authority. Indeed, the Legislature has already applied to Congress regarding the precise subject Proposition 49 was to address. (Assem. J.Res. No.l, Stats. 2014 (2013-2014 Reg. Sess.) res. ch. 77.)
For these reasons, I would hold the Legislature has no power to place an advisory measure like Proposition 49 on the ballot.
The petition of real party in interest for a rehearing was denied February 24, 2016. Chin, J., was of the opinion that the petition should be granted.